UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-20243-CR-ALTONAGA/Brown

**UNITED STATES OF AMERICA**,

    Plaintiff,
vs.

**CRISTOBAL SANDOVAL**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Third Party, Amazon.com, Inc.'s ("Amazon['s]") Motion to Quash Subpoena Duces Tecum ("Motion") [ECF No. 49], filed on June 4, 2010. The Court has carefully considered the Motion, the file, and applicable law.

### I. BACKGROUND

On or about November 28, 2009, a tractor trailer loaded with 12,000 Amazon Kindle 2 ("Kindle") electronic reading devices was stolen from a truck stop in Troy, Illinois. (*See* Compl. 3 [ECF No. 1]). On March 22, 2010, Defendant, Cristobal Sandoval ("Sandoval"), and another defendant were found in Miami-Dade County with approximately 6,000 Kindles.[1] (*See id.* 2). Subsequently, Sandoval was indicted and pleaded guilty to possessing stolen cargo in interstate commerce, a violation of 18 U.S.C. § 659. (*See* Indictment 1 [ECF No. 23]; Change of Plea Hr'g [ECF No. 51]). Sandoval's sentence for this violation will be based, in part, on the value of the stolen property. (*See* Resp. 6 [ECF No. 56]).

---

[1] Amazon's inventory indicates 6,098 Kindles were stolen. (*See* Decl. of Lonnie Anderson ("Anderson") ¶ 4 [ECF No. 48-1]).

Case No. 10-20243-CR-ALTONAGA/Brown

In anticipation of his sentencing hearing, Sandoval subpoenaed certain records from Amazon, the owner of the stolen Kindles. (*See* Subpoena Duces Tecum ("Subpoena") [ECF No. 48-3]). The Subpoena read in pertinent part:

> Amazon must provide [1] the unit cost of production per Amazon Kindle . . . . [2] Provide any and all insurance claims made based upon this incident, including all payments received by Amazon from said insurer and all settlement agreements. [3] Also, provide details for any pending Civil Litigation regarding this matter, that is any disputed amount between Amazon and the insurance provider that has not been settled. [4] The Bill of Lading for this shipment must also be provided. [5] An exact quantity of Kindles being shipped and whether they were refurbished or brand new Kindles. [6] Lastly, whether these Kindles were intended for wholesale in bulk or individual retail sale by Amazon.

(*Id.* 2) (numeration added).

Amazon now seeks to quash the Subpoena.

## II. LEGAL STANDARD

Rule 17(c) of the Federal Rules of Criminal Procedure governs the use of subpoenas duces tecum in federal criminal proceedings. *See United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984). "The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive." FED. R. CRIM. P. 17(c). A party seeking production of documents under Federal Rule of Criminal Procedure 17(c) "must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974); *see also United States v. Marshall*, No. 07-20569-CR, 2008 WL 2474662, at *1 (S.D. Fla. Jun. 17, 2008) (acknowledging *Nixon* as the legal standard). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of an action more . . . or less probable than it would be without the evidence." FED. R. EVID. 401. The

2

Case No. 10-20243-CR-ALTONAGA/Brown

application for such a subpoena must be made in good faith and "not [be] intended as a general 'fishing expedition'." *Nixon*, 418 U.S. at 700 (quoting *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)).

### III. ANALYSIS

Amazon asserts the subpoena should be quashed in its entirety because Sandoval failed to comply with Rules 17(c)(3) and 17(d) of the Federal Rules of Criminal Procedure as he did not obtain a court order prior to issuing the subpoena and he served the subpoena by facsimile. (*See* Mot. 5 n.5). Alternatively, Amazon maintains portions of the subpoena should be quashed because the subpoena "seeks confidential and irrelevant information, . . . [and] is overbroad and procedurally improper."[2] (*Id.* 2). Finally, Amazon discloses some of the subpoenaed information. (*See id.* 7; Decl. of Anderson; Pinkerton Investigative Rep. [ECF No. 48-2]; Bill of Lading [ECF No. 53-1]). Sandoval does not address the Rule 17 violations in his Response but maintains the subpoenaed documents are relevant as "necessary information for sentencing" because his "sentence [will be] based almost entirely on the value of the [stolen] property." (Resp. 3, 6).

In seeking to quash the subpoena in its entirety Amazon first relies on Rule 17(c)(3) of the Federal Rules of Criminal Procedure, a provision designed to implement the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(8). (*See* Mot. 5). Amazon asserts Sandoval failed to comply with Rule 17(c)(3) because he did not obtain a court order prior to serving his subpoena on Amazon. (*See id.*).

---

[2] Amazon also maintains the first three categories of documents (production costs, insurance claims, and pending disputes) should be protected from disclosure because the information is commercially sensitive and highly proprietary. (*See* Mot. 4). The Court does not address this issue because the subpoenaed information is quashed on other grounds. (*See infra* pp. 6-7).

3

Case No. 10-20243-CR-ALTONAGA/Brown

"[A] subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order . . . ." FED. R. CRIM. P. 17(c). "The rule provides a protective mechanism when the defense subpoenas *a third party* to provide personal or confidential information *about* a victim." *Id.* at advisory committee's note 1, 2008 Amendments (emphasis added). The purpose of the court order is to put the victim on notice because "a third party may not assert the victim's interests, and the victim may be unaware of the subpoena." *Id.*

Amazon misunderstands the requirements of Rule 17(c), as it interprets "third party" to mean a third party to the litigation rather than a party other than the victim and the defendant. Amazon is not a "third party" as comprehended by Rule 17(c)(3) because it is the victim in this matter. It was served with the subpoena directly; therefore, Amazon has notice of the proceedings and can protect its own interests as evidenced by the present Motion. Sandoval was not required to obtain a court order prior to service on Amazon.

In a footnote, Amazon also asserts the subpoena should be quashed because it was served by facsimile. (*See* Mot. 5 n.1). Rule 17(d) of the Federal Rules of Criminal Procedure provides "[a] subpoena may be served by the marshal, by a deputy marshal or by any other person who is not a party" and "[t]he server must deliver a copy of the subpoena to the witness . . . ." FED. R. CRIM. P. 17(d). The Advisory Committee Notes indicate Rule 17(d) is "substantially the same as rule 45(c) of the Federal Rules of Civil Procedure, 28 U.S.C., Appendix." *Id.* at advisory committee's note. "This means that '[p]ersonal service of subpoenas is required.'" *MAC Funding Corp. v. ASAP Graphics, Inc.*, No. 08-61785-MC, 2009 WL 1564236, at *1 (S.D. Fla. Jun. 3, 2009) (quoting 9A Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC.: CIVIL 3D § 2454 (2008)). *See also*

4

Case No. 10-20243-CR-ALTONAGA/Brown

*United States v. Grooms*, 6 F. App'x 377, 381 (7th Cir. 2001) (noting Rule 17(d) requires personal service of subpoenas); *United States v. Sabhnani*, No. 07-cr-429 (ADS)(WDW), 2008 WL 7842013, at *2 (E.D.N.Y. July 19, 2008) (granting motion to quash where subpoenas were not personally served). One court has clearly stated Rule 17(d) does not authorize service by facsimile. *See United States v. Venecia*, 172 F.R.D. 438 (D. Or. 1997). *Cf. Johnson v. Petsmart, Inc.*, No. 6:06-cv-1716-Orl-31UAM, 2007 WL 2852363, at *2 (M.D. Fla. Oct. 2, 2007) (finding service by facsimile does not satisfy Rule 45 of the Federal Rules of Civil Procedure).

Sandoval's service of the subpoena duces tecum by facsimile was defective and the subpoena must be quashed in its entirety on this ground. However, the Court assumes Sandoval will likely cure the improper service by effecting proper service of the same subpoena. Therefore, in the interests of justice and judicial economy, the substantive matters regarding the scope of the subpoena raised by Amazon in its Motion are addressed so as to forestall any further delay.

Amazon asserts the first three categories of subpoenaed information (production costs, insurance claims, and pending disputes) are irrelevant to Sandoval's sentencing as Amazon has revealed the retail market value of each Kindle to be $259.00. (*See* Mot. 2, 5; Decl. of Anderson [ECF No. 48-1] ¶ 6). Amazon maintains the definition of "value" stated in 18 U.S.C. § 641, which governs embezzlement and theft of public money, property or records, applies to violations of 18 U.S.C. § 659. (*See* Mot. 5). Section 641 defines value as "face, par, or market value, or cost price, either wholesale or retail, whichever is greater." 18 U.S.C. § 641. Sandoval disagrees and asserts the definition of "value" in section 641 applies only when government property is stolen. (*See* Resp. 6).

Case No. 10-20243-CR-ALTONAGA/Brown

Sentencing guidelines require a determination of the amount of the loss of stolen property in calculating a defendant's base offense level. *See United States v. Machado*, 333 F.3d 1225, 1227 (11th Cir. 2003) (citing U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(1) (2000)). In determining the value of stolen property for sentencing purposes, the United States Court of Appeals for the Eleventh Circuit has adopted an "approach measuring loss within the factual circumstances presented, rather than a universal retail market value." *Id.* at 1228. Rejecting the definition of "value" in section 641, the Eleventh Circuit has determined "[t]he fair market value . . . does not refer to one uniform measure, . . . but rather the market in which the property was in at the time of the offense." *Id.*; *see also United States v. Galvez*, 108 F. Supp. 2d 1369, 1372 (S.D. Fla. 2000) (applying wholesale value because stolen goods were "packaged in wholesale lots and owned by a wholesale dealer at the time of the offense"). Identifying the market the property is in at the time of the offense is the equivalent of "looking at what a willing buyer would pay a willing seller." *United States v. Salvia*, 164 F. App'x 829, 834-35 (11th Cir. 2006) (finding invoices provided evidence of fair market value of stolen goods).

The first three categories of subpoenaed information are not relevant in determining the market value of the stolen Kindles. The unit cost of production of a Kindle will not aid Sandoval in establishing the value of the stolen cargo in either the retail or the wholesale markets.[3] Similarly,

---

[3] While most products are sold above their production costs, that is not always the case with newly-developed electronic devices like the Kindle. *See* Janusz A. Ordover, *Competition Policy for High-Tech Industries*, 24 Int'l Bus. Law 479, 480 (1996). Manufacturers of cutting-edge devices often employ penetration pricing, which involves pricing products below early production costs either to quickly establish market-share or with the expectation production costs will be significantly reduced once economies of scale are attained. *See generally* Joel Dean, *Pricing Pioneering Products*, J. of Indust. Econ., July 1969, at 175-76. Therefore, production cost may not serve as a "floor" for the wholesale market value.

Case No. 10-20243-CR-ALTONAGA/Brown

Sandoval's demand for information about "any and all insurance claims" and "any and all pending litigation" related to insurance is irrelevant in determining *market* value. (Subpoena 2). Sandoval asserts the insurance proceeds "paid out go[] directly to value . . . marking an agreed upon value per Kindle," but he fails to explain the nexus between an agreement between Amazon and its insurer, and the market value of the Kindles. (Resp. 7). Assuming, *arguendo*, an insurance settlement included an agreed upon value per Kindle between Amazon and its insurer, that measure only indicates the result of a negotiated agreement between Amazon and its insurer – not the actual value of the Kindles in the marketplace. While a "court may measure loss in some other way, " it does so only where "the market value is difficult to ascertain or inadequate to measure harm *to the victim*." *Machado*, 333 F.3d at 1228.

Amazon has complied with Sandoval's fourth and fifth demands by providing the bill of lading , specifying exactly how many Kindles were shipped (*see* Bill of Lading), and indicating the devices were "brand new." (Decl. of Anderson ¶ 4). However, Amazon's response to Sandoval's final demand is incomplete because Amazon failed to indicate whether the stolen Kindles were intended for wholesale or retail sale *by Amazon*. (*See* Subpoena 2) (emphasis added). Amazon indicates the stolen devices were "intended for retail sale to consumers," but it is unclear whether the devices were being shipped as products in wholesale commerce (sold to a retailer prior to their sale to consumers) or in retail commerce (Amazon, itself, intended to sell the Kindles directly to the consumer). (*See* Decl. of Anderson ¶ 5).

Whether the Kindles were in the wholesale or retail market at the time of the theft is relevant to Sandoval's sentencing. *See Machado*, 333 F.3d at 1227-28; *Galvez*, 108 F. Supp. 2d at 1372.

7

Case No. 10-20243-CR-ALTONAGA/Brown

Therefore, in a properly-served subpoena, Sandoval may seek information regarding whether the stolen Kindles were intended for the wholesale market or for individual retail sale by Amazon. If intended for the wholesale market, Sandoval may also inquire of Amazon as to the wholesale value of the stolen goods.

### IV. CONCLUSION

Consistent with the foregoing analysis, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Third Party, Amazon.com, Inc.'s Motion to Quash **[ECF No. 49]** is **GRANTED**.

2. Should Sandoval properly serve a subsequent subpoena duces tecum on Amazon.com, the scope of the subpoena shall be governed by this Order and it shall be served **no later than July 30, 2010**.

3. Amazon shall file its response to a properly-served subpoena **no later than seven days** following receipt of the subpoena.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of July, 2010.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record